Israel S. Converse, Appellant *vs.* Burrows & Prettyman, Respondents.

The Court instructed the jury as follows: "Where a contract was made by one to furnish to another a specified article of a particular description, to be used for a particular purpose, at another place, and the destination, purpose and use is known to him who agrees to furnish the article, and the article furnished is defective for the purpose, and not according to the contract, the damages occasioned by reason of such defects, applied to such purpose at the place of its use, are direct and recoverable, and the damage in such case is, the difference between the value of the article received, and that of the article contracted for at the place of its use." *Held,* That the instruction given was correct.

The Act of March 1, 1856, (Session Laws of that year, page 13,) allowing an appeal "from an order granting a new trial" is a remedial law, and may be construed *ultra,* but not *contra* the strict letter—And may be retrospective, provided it does not impair contracts, or disturb vested rights

Note. The original Act of March 1, 1856, above referred to, allows an appeal "from an order granting *or refusing* a new trial." The words "or refusing" are omitted in the Statutes as published.— *Reporter.*

This was an appeal from an order of the District Court of Nicollet County, granting a new trial. The record contains a Bill of Exceptions containing a full history of the conduct of the trial below, but the only question before this Court, arises upon the correctness of an instruction given to the jury by the Court below, upon the measure of damages under the pleadings, which instruction, is quoted in full in the opinion filed in this Court. The District Court granted a new trial, upon the ground that this instruction was incorrect.

The following are the points and authorities of Counsel for Appellants:

*First.* The complaint alleges distinctly the contract of the Defendants to furnish the Plaintiff with 190 barrels of pork of certain quality and description, packed and cured in a certain manner, and in barrels of a certain description; the delivery of the pork under the contract, and that it did not answer the requirements of the contract, but was essentially damaged and defective.

Did the complaint contain no further allegation the rule of damages contended for by Defendants' counsel, *i. e.* the difference between the value of the article contracted for, and that of the article delivered, *at the place of delivery,* would doubtless be the true one.

But it is further alleged in the complaint, that the pork was

30

purchased by the Plaintiff for supplies to Fort Ridgley in Minnesota, and that the Defendants well knew of this fact at the time the contract was made.

This changes the rule of the damages, and renders the Defendants liable to the Plaintiff for the difference in value *at Fort Ridgley*, between the article contracted for, and the article delivered. *Bridge vs. Wain*, 1 *Starkie*, 502; (2 *Com. Law. Rep.* 486.) *Carey vs. Gruman*, 4 *Hill* 625; *Hargons vs. Ablon*, 5 *Hill* 472; *Sedgwick on Measure of Damages*, 294; *Brown vs. Edgington*, 2 *M. & Gr.* 279 (40 *Eng. Com. Law*, 391;) *Bluett vs. Osborn*, 1 *Starkie* 384 (2 *Com. Law* 437;) 2 *Parsons on Cont.*, 456, (*note q.*) *also pp.* 486, 487; *Nourse vs. Barnes*, T. *Ray'md R.* 77; *Bracket vs. McKair*, 14 *John.* 170; *Chitty on Cont.*, 869; 1 *Parsons on Cont.*, 470, 474.

*Second.* The learned Judge who granted a new trial in this cause, concedes that the pleadings and evidence in this case are such as to take it out of the ordinary rule above referred to, (*vide paper book fol.* 139,) but holds (*vide fol.* 140 *and* 146 *inclusive*,) that the measure of damages is the difference between the actual value of the pork *at Fort Ridgely*, in its defective condition, and the price which the Plaintiff *would have received for it* had it been of the quality prescribed in his contract with the Defendants; to determine which, the Plaintiff should have been required to prove that the pork would have been accepted as supplies at the Fort, had it been of the warranted quality, and the amount that he would have received for it had it been so accepted under his contract with the Fort. This is manifestly wrong, because,

1. There is nothing in the pleadings or evidence to show that the Plaintiff had contracted with the Fort *at any certain price;* and in the absence of such showing the Court cannot presume that such was the fact, but must, on the contrary, presume that he was to receive, and would have received, for the pork, *its fair value* at that point.

2. The Plaintiff does not claim that the Defendants were to *fill his contract at the Fort,* but that they were to furnish him with an article of a *specified quality*—knowing its destination. Had they fulfilled their contract, it was not their concern whether the pork was accepted of the Plaintiff at the Fort or

not. Their liability must be controlled by the *value* of the article at that point, and they have no concern whatever with the Plaintiff's *contract price* at the Fort (if he had any) except that, it may be, that could they show that the Plaintiff had contracted to sell it there for a price less than its value, as proved, they might be entitled to the difference between that price and that value, in mitigation of damages; but this would be clearly *matter of defence* which they have not seen fit to interpose. 4 *Hill*, 625; *Hargons vs. Ablon*, 5 *Hill*, 474; *Comstock vs. Hutchinson*, 10 *Bar. S. C. Rep.*, 211.

*Third.* The damages are not excessive, nor is there any evidence that they were given under the influence of passion or prejudice.

The evidence of the value of the pork at the Fort in its damaged condition is, that it was sold at a fair sale for    \$1015,65

That the expenses of the sale were,    -    -    25,00

Net proceeds,    -    -    -    -    -    \$990,65

Allowing the Defendants the benefit of the net proceeds of the portion bought by McLeod—76 bbls—and it stands on the evidence thus:

|  |  |  |
|---|---|---:|
| He paid for the 76 bbls. at the sale, | - | \$ 372,00 |
| " " for expenses of getting them to Traverse, | | |
| 34 bbls. at \$2,25, | - - - - - | 76,50 |
| 29 " " 3,00, | - - - - | 87,00 |
| " " hauling at Fort, | - - - - | 10,00 |
| " " drayage at Traverse, | - - | 1,50 |
| | | \$547,70 |

| | |
|---|---:|
| He realized for it, 13 bbls. sent the Indian country, at \$8,00,   - - - - | \$104,00 |
| 16 bbls. at fr. \$2 to \$6, (average \$4,50,) - | 72,00 |
| 1 " " Eureka, - - - - - | 12,00 |
| 2 " " South Bend, \$12 and \$15, - - | 27,00 |
| 9 " " Mankato, \$12, - - - | 108,00 |
| 1 " to Roulliard, \$10 or \$12, (say,) - | 19,00 |
| 1 " for \$20, - - - - . | 20,00 |
| 2 " at \$16, - - - - - | 32,00 |
| 3 " retailed at 10 cents per lb., - | 60,00 |

| | | |
|---|---|---:|
| 2 " sold to A. You, at $16, - - - | | 32,00 |
| 1 " " " Schmall, - - - - | | 15,00 |
| 1 " " " Jervais, - - - - | | 15,00 |
| 24 " at $8 to $10, (say 9,) - . - | | 216,00 |
| | | $724,00 |
| Deduct expenses as above stated, - - | | 547,00 |
| | | $177,00 |

Allowing McLeod, then, nothing for services
in selling, his receipts on that portion of the
pork bought by him, over and above the
price paid, and his actual expense of selling
are only,    - - - - - -    177,00

Which added to the net proceeds of sale at
auction, makes,    - - - -    $1167,65
The evidence relative to the value of pork of
the quality Defendants contracted to furn-
ish, . varies somewhat; the lowest price
testified to being $20, and the highest $28
per bbl., 190 bbls. at $28 per bbl., would
amount to,    - - - - -    $5320,00
Deduct value in damaged condition as above
shown,    - - - - - - -    1167,65

And it leaves Plaintiff's damages as proved,   $4152,35
The verdict found was $3702,40, being clearly $449,95 less
than the evidence would justify. 1 *Parsons on Cont.* 474.

The following are the points and authorities presented by
Counsel for the Respondents:

*First.* From the paper books in this case, folio 134, it ap-
pears that the order granting a new trial in this action (from
which order this Appeal was taken) was made on the 7th day
of February A. D. 1856, at which time there was no right or
authority in either of these parties to appeal from such order,
and that, therefore, this Court has no jurisdiction in this Ap-
peal. Vide *Session Laws Ter'y Minn.* 1856, *pp.* 12, 13, *sec.*
11 *Stat. Minn.* 1857, *p.* 414, *sec.* 11.

*Second.* The law allowing an Appeal from an order granting or refusing a new trial having been passed and enacted subsequent to the time when the order appealed from in this action was made, and not being expressly made retrospective or retroactive, cannot operate retrospectively nor retroactively upon said order so as to give this Court jurisdiction in the Appeal. *Smith's Constitutional Construction,* secs. 149, 161, 172, 368-9, 370, 759; 7 *Johns. R.* 477; 8 *Wend. R.* 661; 1 *Hill,* 324, 334; 11 *Paige,* 400; 1 *Comstock,* 129; 13 *Ben. Monroe (Ky.)* 1, *Sleeck vs. Maysville and Lex. R. R. Co.;* 23 *Georgia R. (A.D.* 1857) 182, *Johnson vs. Kirk & Co.;* 3 *Foster (N. H.)* 382, *Gilman vs. Cutts;* 4 *ib.* 139, *Kennet's Petition;* 4 *ib.* 344, *Willard vs. Harvey;* 7 *ib.* 289, *Adams vs. Haskett.*

If this Court has jurisdiction in the Appeal, then we submit as further points—

*Third.* The general rule of damages where a party has purchased a worthless article is, the difference between the value of the article contracted for and the real value of the article received at the time and place of such sale, for such difference compensates the party and makes him whole. 3 *Denio's R.* 409; 21 *Wend.* 342; 2 *Hill,* 291; *Sedgewick's Damages,* 291.

But such rule only applies where the damages actually and necessarily ensue or flow out of the wrong or injury complained of. 2 *Parson's Cont. pp.* 452-3; 2 *Greenl. Ev. sec.* 254.

*Fourth.* The jury in this action have rendered a verdict for special damages, or such as are the natural consequences of the act complained of, although they do not necessarily result from it; and in actions to recover damages for the breach of a contract, if the damages do not necessarily arise from the breach complained of so as to be implied by law, the Plaintiff must specify in his *declaration* the particular damage which he has sustained, or he will not be permitted to give evidence of it. 2 *Barb. S. C. R.* 525, *Bogert vs. Bushlot;* 4 *Comstock,* 133, *Vanderlim vs. Newton;* 12 *Wend.* 64, *Sturge vs. Murray et al;* 13 *ib.* 390, *Slack et al. vs. Brown et al.;* 1 *Chitty's Pl.* 396; 14 *Wend.* 159; *Sym vs. Gould;* 2 *Parson's Cont.* 452, 453, *"K";* 2 *Greenl. Ev. sec.* 254; *Cowen's Treatise,* 4th *Ed.* secs. 977, 979, *p.* 371.

But there is no amount in the complaint in this action of special damages; and the Court below improperly admitted the evidence (which was objected to at the time by Defendant's attorney) of one McLeod and one Randall, as to the market value of pork at Fort Ridgely, which evidence went to prove special damages not alleged in the complaint; for the complaint avers the pork was purchased to furnish supplies to the Fort under a contract, and not for the market there. If the Plaintiff was entitled under his complaint to prove there the general damages, he should have been confined to the special damages which he actually sustained; and those damages were, the difference between the actual value of the pork in its defective condition and what it would have been worth for the purpose for which it was purchased, to wit: for supplies to the Fort on the contract, if it had been of the quality and condition bargained for.

*Fifth.* The case shows the Plaintiff only paid Defendant for the pork the sum of $2259, and that the jury rendered a verdict for the Plaintiff for $3702.40, making a clear gain to Plaintiff of $1443.40 out of the market price of the pork at Fort Ridgely, when neither of the parties contracted with reference to that market but with reference to some other things, the same $1443.50 being for special damages not alleged.

*Sixth.* It is alleged in the complaint in this action, that the pork was purchased by the Plaintiff for supplies to Fort Ridgely, in Minnesota, and that the Defendants well knew this fact at the time the contract was made. Now, if this makes the Defendants liable for special damages, the rule of damages is the difference between the article contracted for, for the purpose for which it was bought, and the value of the article delivered. 1 *Parson's Contracts, p.* 468, 1 *Ed.*, " *V.*"

H. R. BIGELOW, Counsel for Appellant.

BABCOCK & COTTON, Counsel for Respondent.

*By the Court*—ATWATER, J. The Complaint in this action sets forth a contract on the part of the Defendants to furnish the Plaintiff 190 barrels of pork, to be of the quality and put

up in the manner specified in the contract, and to be delivered to the Plaintiff on board steamboat at Davenport, Iowa.

. It is alleged that the pork was to be furnished to the Plaintiu for supplies at Fort Ridgely, Minnesota, to fill a contract there made by the Plaintiff, of which fact the Defendants had notice. The complaint alleges breaches in the contract on the part of the Defendants, claiming damages therefor.

The answer admits the contract substantially as set forth, and denies the breaches alleged in the complaint. The Plaintiff replied, and the issue was tried by a jury at the October Term of the District Court for Nicolett county, 1855, which was held by the Hon. A. G. Chatfield. A verdict was rendered for the Plaintiff, the jury assessing his damages at $3702 40.

Various exceptions were taken on the trial to the admission of evidence, and the instructions of the Court to the jury; but it is deemed unnecessary to notice any save the instructions of the learned judge before whom the cause was tried, to the jury on the question of damages; as that was the only point insisted upon in the argument before this Court. The charge to the jury on this point, as appears by the record was as follows, viz: "Where a contract was made by one to furnish to another a specified article of a particular description, to be used for a particular purpose, at another place, and the destination, purpose, and use is known to him who agrees to furnish the article, and the article furnished is defective for the purpose and not according to the contract, the damage occasioned by reason of such defects applied to such purpose at the place of its use are direct and recoverable, and the damage in such case is the difference between the value of the article received and that of the article contracted for at the place of its use." To this ruling the counsel for the Defendant excepted, and moved for a new trial on this, among other grounds of error, before the same judge who tried the cause. His honor granted the motion for a new trial, upon the ground solely, that the instruction above quoted was *incorrect*, and that he should have instructed the jury, that the correct rule of damages in this case, would be the sum the Plaintiff had lost by the breach of warranty on the part of the Defendants, at the place where the pork was destined to be used.

Upon a careful consideration of this case we are constrained to hold, that the Court was correct in its instruction to the jury, and erred in its ruling on the motion for a new trial.

Had there been nothing said between the parties to this contract, as to the place where the pork contracted for was to be used, there seems to be no dispute but that the correct rule of damages would have been the difference between the value of the article contracted for, and that of the article received at the place of delivery. But the case at bar forms an exception to this general rule. The Plaintiff designed this pork for a particular place and purpose, of which fact he notified the Defendants at the time of the contract. The Defendants therefore entered into the contract in view of these facts, and incurred the obligations imposed by the law in such cases. What were these obligations? In our view, to pay the difference between the value of the pork as such value was actually found in its damaged state at Fort Ridgely, and the market value of the quality of pork contracted for at the same place.

The correct rule of damages in this case must be determined from the language adopted in the complaint (which purports to state the substance of the contract) in reference to the place of destination, and use of the pork. The only clause in the complaint referring to this point reads as follows, viz: "The said Plaintiff further shows to the Court that the said pork was to be furnished to Plaintiff for supplies, for Fort Ridgely in the Territory of Minnesota, which plaintiff had contracted to supply, which fact was well known to the said Defendants."

Now had the complaint simply stated that the pork was destined for use at Fort Ridgely, or for the market at Fort Ridgely, and that the Defendants had notice thereof, we presume there would have been little question but that the instruction of the Court to the jury would have been correct. The case would have fallen within the rule laid down in *Bridge vs. Wainc*, 1 *Stark*, 504, a case which seems to be quoted with approbation in *Cary vs. Gruman*, 4 *Hill*, 625, as well as in *Hargons vs. Ablon*, 5 *Hill*, 472.

The general rule of damages on a breach of warranty on a sale of personal property, as above stated, is the difference between the value of the article sold in its defective condition,

and the market value of the article, at the place where it was to be used in the condition represented by the vendor. The rsason of this rule does not seem to be based upon the fact, that such measure of damages would always restore the vendee to what he had lost by the breach of warranty, for in many cases, this would not be true.

But rather upon grounds of public policy, it being manifestly more for the public interest, that some rule should be established in such cases, rather than leave each individual case to be governed by its own particular circumstances. Hence parties entering into contracts of this kind are aware of their rights and liabilities, under a breach of contract by either party; and the exception to the rule in the case above referred to, is founded on the same reason, and is in harmony with it; the only difference being that the rule of damages being made to depend upon the market value of the article at the place where it is to be used rather than the value, at the place where it is purchased. And no good reason can be offered why the rule should be otherwise. If the general rule be not based upon the principle of restoring the party to what he has lost by the breach of contract, it is difficult to perceive why the exception should be based upon such principle. For the parties sustain the same relation to each other and the subject matter, save that in the latter case, the article is purchased for a particular market, of which the vendor is apprised, and it is manifest justice that the vendee should be made whole in that market. And in the eye of the law he is made whole, by receiving the difference between the actual value of the article in its damaged condition, and its real value in the condition required by the contract at the place where the article was to be used.

But it is claimed that the allegations of the complaint, extend the contract made between the parties, so that in case of breach on the part of the Defendants, they became liable not for the difference between the market value of such pork at Fort Ridgely as was called for by the contract, and the inferior article furnished by them, but for the difference in value between such article, and the contract price, between the Plaintiff and the Fort. Let us look at the allegation and see if this view can be sustained. It will be observed that it does not

appear from the pleadings, what the contract was, between the Plaintiff and the party with whom he contracted at Fort Ridgley, nor that there was any stipulated price for the pork. Much less does it appear that the Plaintiff at the time he contracted with the Defendants for the purchase of the Pork, informed them that he had contracted with the Fort at any particular price, nor, if so, at what price. In the absence of any agreement therefore on the subject, the presumption would be, that the Plaintiff had agreed to furnish the pork at current rates at the place of delivery, (the Fort) But whatever his agreement may have been, it does not appear that the Defendants had any reference to it, or were influenced by it in entering into their contract. They did not agree to fill the contract of the Plaintiff, nor does it appear that they knew what his contract was. They knew only that he had *a* contract to be executed at that place, and the fact that they were aware that the pork was to be used by the Plaintiff at Fort Ridgely, makes the case an exception to the general rule which would govern damages or breach of warranty. And to bring the Defendants within the exception it was important that they should know in reference to the Plaintiff's contract, so far as the *place* was concerned. For the degree of care and diligence which they might exercise to fill their contract might be influenced by such knowledge. The fact that the pork was to be transported to a considerable distance during the warm season, might lead them to exercise more care in its selection and preparation, than they otherwise would have done. It therefore becomes important to the Plaintiff if he would bring the Defendants within the exception to the general rule of damages that he should bring home to them the knowledge, that the pork was to be used at a certain place. And if he would go farther than this, and make the Defendants responsible for the loss he has sustained on the particular contract, he must at least show, that the Defendants knew what that contract was; and we are not prepared to say that even that would be sufficient without showing that their express contract was to fill his own or to make him whole for any failure to do so. The object of the Court should be to apply the rule of law to the contract between the parties, if that contract can be ascertain-

ed. We are satisfied that the Defendants entered into the contract with the Plaintiff with the knowledge of the *place where* the pork was to be used by the Plaintiff. But we are not satisfied, nor is there any thing in the case to show that the Defendants in making their contract, took into account in any manner the price the Plaintiff was to receive for his pork, or that they ever even knew what price he was to receive. In such case, we certainly can see no good reason, why either the Defendants or Plaintiff should now claim any benefit from a consideration which never entered into the original contract. Suppose the Plaintiff had contracted to sell his pork at the Fort for one hundred dollars per barrel, should he be permitted to recover from the Defendants the difference between that sum, and the actual value of the pork per barrel at the Fort, in its damaged condition? Manifestly it would not be just that he should do so, unless the Defendants had expressly agreed to pay such difference.

. A law which should recognize such a measure of damages in such cases would be highly inequitable and work great injustice. If such was the rule, as has been justly observed, it would open the door to unfair dealing, and a fraudulent inflation of price, by the vendee, with a view to charge the vendor or guarantor; for, if the vendor was to be made liable for the loss of a particular trade which the vendee might have made. with reference to the subject-matter of the sale, the particulars of such trade, especially as to price, would be of the highest consequence to the vendor, and would form a principal element in, and become the very essence and basis of, the original transaction, instead of being considered of such little moment as not even to be mentioned between the parties. Had the contract between the Plaintiff and Defendant in the case at bar been in fact made with reference to the price at which the Plaintiff re-sold the pork, as well as the *place* where it was to be used, that fact should have been averred by the Defendants in their answer if they would avail themselves of any advantages from it.

If the rule in this case be that the Plaintiff is entitled to recover from the Defendants such sum as he has lost by their breach of warranty at the place where the pork was destined

to be used, then the proposition must be true, that the loss of a particular bargain on re-sale of the warranted article must be the rule of damages on breach of warranty; but the authorities are directly to the contrary of this proposition. In *Clare vs. Maynard*, 7 *Carr and Payne*, 741, it appears that the Plaintiff gave £45 for a horse, and had sold him for £55 with warranty, but was obliged to take him back. This *per se* was not allowed as a ground for recovering the £10 difference, the Court saying it was the mere loss of an accidental bargain. The same principle is recognized in *Voorhees vs. Earle*, 2 *Hill*, 288; 6 *Adol and Ellis*, 519; *Hargous vs. Ablon et al.* 5 *Hill*, 472; *Phillips on Ev. vol* 5, *p.* 105; *Greenl. on Ev. vol.* 2, *p.* 273; *Sedg. on Dam.* 295.

A preliminary objection was taken on the argument by the counsel of the Respondents, that this is not an appealable case, as the act providing for Appeal from an order granting a new trial was passed after the allowance of the order in the case at bar. The provision under which this Appeal is brought is found in the Amendments of Revised Statutes, Chapter 5 of Session Laws of 1856, page 13. The object of the Act is evidently to extend the right of Appeal beyond what previously existed. It is a remedial law, and should receive a liberal construction. It provides a remedy in a case where otherwise injustice might be done, and should be given effect in all cases where proceedings have not been had to such an extent as to exclude its application. Statutes of this nature may be construed *ultra* but not *contra* the strict letter (1 *Kent*, 465); and the doctrine that statutes retrospective in their effect are unconstitutional, is held not to apply to remedial statutes which may be of a retrospective nature, provided they do not impair contracts or disturb absolute invested rights (1 *Kent*, 455). We cannot perceive how the Act giving the right of Appeal in this case impairs in any manner the contract between the parties, or affects any vested right of the Defendants. The same reasoning as in the case of *Grimes vs. Byrne* (argued at the present term) here applies, and the objection cannot be sustained.

The order granting a new trial is reversed.