L. M. MERRITT & SON, APPELLANTS, VS. W. L. WITTICH, APPELLEE.

1. Where a party sells and delivers to another party at a port of entry in this State a quantity of timber on board a ship, and guarantees the same to be of "the season's manufacture, and of fair average quality, the measurement to overrun the specifications," the measure of damages to be recovered in an action for a breach of the contract is controlled by the difference in the value of the timber in the market where the contract was made, and the timber delivered.

2. The refusal of the court to receive evidence in such a case of the difference in such value in the market of Liverpool, where the contract does not provide for such an assessment of damage, and where there is no allegation in the declaration that the damage was there to be assessed, is not error.

3. The contract or agreement of parties in Liverpool for the purchase and sale of such timber, to receive from their consignor, in Pensacola, a certain sum in full for damages on a breach of such contract to be completed in Liverpool, is not evidence of the value of the timber as guaranteed in Pensacola, and its market value in Pensacola.

4. The general rule is, "That damages recoverable will be calculated at the market value of the goods at the time and place when and where they ought to have been delivered." "And evidence of the value of such goods in a foreign market cannot be received upon a question of damages, unless it is averred in the declaration that the goods were bought for that market."

Appeal from the Circuit Court for Escambia county.

The facts of the case are stated in the opinion.

*John C. Avery* and *J. E. Yonge* for Appellants.

The first error assigned is that the court below rejected so much of Thomas Harrison's deposition as went to show the guaranty of the contract between Gilbert, Harrison & Co. and Carter, Tyner & Parker. The rejection of this testimony was clearly erroneous, because, when connected with testimony previously given, it made out a material breach of the contract sued on.

The guaranty of the contract sued on was that the timber was "of fair average quality." The guaranty of the contract between G., H. & Co. and C., T. & P. was that "the timber should be of the fair average quality of the season's shipments of pitch pine from Pensacola to Liverpool." These two guarantees are substantially identical, plaintiffs having shown by other witnesses that the fair average quality of timber from Pensacola to Liverpool was not different from the fair average quality of timber at Pensacola, and, if identical, then the testimony rejected was material and pertinent.

Plaintiffs did not derive any benefit from the admission of the statement that "on the arrival of the ship the witness himself examined the cargo as it was discharged, and at once decided that it was not of fair average quality of the season's shipments, but on the contrary was inferior." So far as the jury was advised, the "fair average quality" here mentioned might have had reference to shipments from Canada, or any other timber section, remote from Pensacola. They required the information, which would have been afforded by the excluded testimony, to enable them to properly understand and apply to the case before them the testimony that was admitted.

The second error assigned is the rejection of the interrogatory addressed to, and the answer thereto, by Wilford Car-

ter. It may be that it was immaterial in itself whether reclamation was or was not made by Carter. Tyner & Parker; and if the witness had been asked only whether such reclamation was made and allowed, then, possibly, the objection would have been plausible. But the interrogatory requires the witness to state further whether the amount of the reclamation was more or less than the true difference between the value of the timber delivered and the value of average shipments from Pensacola. Thus, in connection with the other testimony in the case, the whole interrogatory, and the answer to it, became relevant and proper.

But the evidence of amount of reclamation paid is itself admissible for the purpose of determining value. Such evidence shows that the price for which the timber sold was so much less than it would have been but for defect warranted against; and evidence of the price obtained on re-sale has been held admissible to prove value. Field on Dam., §§273 and 281, note; Reggio vs. Braggiotti, 7 Cush., 166; Foster vs. Rogers, 27 Ala., 602; Clare vs. Maynard, 6 A. & E,, 519; Cox vs. Walker, id., 523.

Evidence of value at Liverpool is admissible because it appears that it was in contemplation of the parties, when the sale was made, that the timber was to be shipped to Liverpool for re-sale. Field on Dam., §§266 and 252; 40 N. Y., 422; Converse vs. Prettyman, 2 Minn., 229; Sedg. on Dam., 279, note (1); Hadley vs. Baxendale, 9 Exch., 341; Hadley vs. Baxendale, 26 Eng., L. & E., 398.

*W. A. Blount* for Appellee.

Mr. Justice VanValkenburgh delivered the opinion of the court.

L. M. Merritt and E. B. Merritt, merchants and part-

ners under the name and firm of L. M. Merritt & Son, brought their action in assumpsit against W. L. Wittich to recover the sum of two thousand dollars for breach of contract, which contract or agreement is in the words and figures following:

"PENSACOLA, May 17, 1879.

"W. L. Wittich sells, and L. M. Merritt & Son purchase a cargo of p. pine, loaded on board of the British ship N. Mosher, say about one-half of hewn timber, averaging ninety cubic feet per log, and about one-half of sawn timber, averaging forty cubic feet per log, with timber for beam filling, and deals for stowage, timber guaranteed of the season's manufacture, of fair average quality. The measurement guaranteed to overrun the specification. The price to be paid estimated upon the intake measurement and to be for beam fillings forty-five shillings for load of fifty cubic feet, for deals eight pounds ten shillings per standard of 165 cubic feet, and cargo fifty-three shillings per load of fifty cubic feet, less two and a half per cent. commissions, payable on signing bills of lading.

(Signed.)                         W. L. WITTICH,
                                  L. M. MERRITT & SON.

" Witness both signatures,
        J. R. McGAUGHY."

The defendant, for plea, said that he performed his contract, that the timber was of said season's manufacture, of fair average quality, and did overrun the specifications.

The plaintiffs filed their replication and issue was joined.

The case was tried in January term, 1883, and the jury found for the defendant, and judgment was entered.

From this judgment the plaintiffs bring their appeal.

The errors assigned are :

First. The court below erred in sustaining the objection to the interrogatory adressed to Wilford Carter.

Second. The court below erred in sustaining the objection to answer to interrogatory addressed to Thomas Harrison.

The record shows that the plaintiffs introduced witnesses who " testified, that the fair average quality of pitch " pine timber at Pensacola was not different from the fair " average quality of such timber at Pensacola in other sea- " sons, and that the fair average quality of pitch pine " shipments from Pensacola to Liverpool, in 1879, was not " different from the fair average quality of shipments in " other seasons, or to other ports, and that the fair average " quality of such shipments from Pensacola to Liverpool " was not different from the fair average quality of such " timber at Pensacola, and that the timber in question was " not of fair average quality of the season's shipment of " pitch pine timber from Pensacola to Liverpool " ; and then and there by their attorneys, offered the deposition of Thos. Harrison, taken at Liverpool under a commission, and upon written interrogatories, in the course of which said deposition and in answer to the following interrogatory :

" State whether in the year 1879 you became the purchaser of a cargo, or part of a cargo of pitch pine timber shipped from Pensacola, Florida, United States of America, to Liverpool, on the British bark N. Mosher, by L. M. Merritt & Son., and if so, state what was the description and quality of said cargo. Was it, or was it not merchantable ? Was it, or was it not of fair average quality of pitch pine shipments from Pensacola to Liverpool, in previous years ? Please state whether the average quality of pitch pine shipments to Pensacola previous to 1879 were better or worse than the shipments of 1879 ? "

The said witness answered and said : " In the year 1879 his firm of Gilbert, Harrison Brothers purchased from Messrs. Carter, Tyner & Parker portions of the cargo of the

N. Mosher; such purchases were made before the ship arrived, and upon a guarantee in the contract that the timber should be of the fair average quality of the season's shipments of pitch pine from Pensacola to Liverpool; on the arrival of the ship the witness, himself, examined the cargo as it was discharged, and at once decided that it was not of fair average quality of the season's shipments, but on the contrary was inferior. The inferiority was so great that the witness rejected the timber as a fulfillment of his contract, and refused to accept it, and the rejection was allowed by Messrs. Carter, Tyner & Parker. It could not be resisted." "But to the admission of said answer to said interrogatory the attorney for the said defendant did then and there object, because the guarantee of the contract in said answer mentioned was different from the guarantee of the contract mentioned in the declaration; and the said Judge did then and there deliver his opinion and decide that the said objection ought to be allowed, and said answer ought not to be admitted in testimony," except the following: "In the year 1879, his firm of Gilbert, Harrison & "Bros. purchased from Messrs. Carter, Tyner & Parker, "portions of the cargo of the N. Mosher; such purchases "were made before the ship arrived." And except the following: "On the arrival of the ship the witness, himself, "examined the cargo as it was discharged, and at once de-"cided that it was not of fair average quality of the sea-"son's shipments, but on the contrary was inferior." To which opinion and decision of said Judge said plaintiffs, by their attorneys, did then and there except.

It also appears by the record that the plaintiffs produced and offered the deposition of Wilford Carter, of Liverpool, taken under a commission upon written interrogatories; that he was one of the firm of "Tyner, Carter & Parker," who were the purchasers of the cargo of timber on the N.

Mosher; that witness was required by the plaintiffs to answer the following interrogatory : " State whether any reclamation was made from L. M. Merritt & Son, in behalf of Messrs. Vaughn & Co., on account of said cargo not being of fair average quality of shipments of pitch pine timber from Pensacola, Florida, to Liverpool, and if so, state in what amount, and was the said reclamation paid ? And was the amount of the said reclamation more or less than the true difference between the value of said timber and the value of average shipments from Pensacola, estimating also the deficiency in the measurement ? "

The witness answered as follows : " Witness saith his firm claimed an allowance under the circumstances as stated in his answer to the last interrogatory. Negotiations in regard to the claim were conducted between his firm and Messrs. Merritt, by Mr. Smith, of the firm of James Smith & Co. In result, witness agreed to accept an allowance of £47 and £63, making together £110 from the contract price, and such amount was duly paid to the witness's firm. The witness has no hesitation in saying that the amount of the allowance was not more than the true difference between the value of the timber, and value of the average shipments from Pensacola, estimating also the deficiency in measurement."

To this interrogatory and answer the defendant's counsel duly objected, because the same was irrelevant and impertinent. The court sustained the objection, and decided that the answer should not be read to the jury. The plaintiffs duly excepted to the ruling of the court.

The contract in this case was made in Pensacola, and in it there is no reference as to the place of delivery of the timber by the ship. Wittich sells and Merritt & Son buy at Pensacola. The title there passes and the delivery is made. The declaration charges the same fact, to wit:

3

" That on the 17th day of May, A. D. 1879, in the county aforesaid (Escambia county) the said defendant sold to L. M. Merritt & Son, the plaintiffs, a cargo of pitch pine loaded on board the British ship N. Mosher," &c. There is no allegation that defendant knew that said timber was to be transported to Liverpool, or that it was to be there inspected. The defendant did not guarantee that the timber should be of the " fair average quality of pitch pine " shipments from Pensacola to Liverpool in previous years." The language of his contract is: " Timber guaranteed of " the seasons manufacture, of fair average quality." He did not guarantee. " that the timber should be of the fair aver- ".age.quality of the season's shipments of pitch pine from ". Pensacola to Liverpool," as embodied in the answer to the. interrogatory propounded to the witness Harrison. The quality was to be determined in the Pensacola market, and not Liverpool... The Liverpool market might have demanded a higher quality of timber than did the Pensacola market. It appears that the consignors at Liverpool, Carter, Tyner & Parker, had sold, by contract, to Gilbert, Harrison Bros. a portion of the cargo, of the N. Mosher, to arrive, and had guaranteed in that contract " that the timber should be of the fair average quality of the season's shipment of pitch pine *from Pensacola to Liverpool.*" The evidence of this witness, Harrison, was in reference to the contract so made with his firm and not with reference to the contract here declared on, which is essentially different from the one between Carter, Tyner & Parker and Gilbert, Harrison Bros. The evidence as to the quality of the timber in question should have been directed in reference to the Pensacola market, and not to that of some foreign port. It is true that the witness, E. B. Merritt, one of the plaintiffs, testifies in his own behalf " that the said timber in the said " declaration mentioned was purchased by the plaintiffs

" from the defendant for re-sale at Liverpool, England, of " which the defendant at the time of said purchase had no- " tice, and that the said ship N. Mosher, on board of which " the said defendant contracted to and did deliver said tim- " ber, was under charter to the said Wittich at the time of " said sale for some safe port in the United Kingdom, and " about the time of the said sale of timber in the declara- " tion mentioned, the defendant assigned said charter party to the plaintiffs." None of these facts so sworn to appear in the contract, nor are they alleged in the declaration. This evidence does not, therefore, permit the testimony of Harrison to be introduced to show the quality of the timber in Liverpool under the sub-contract with Carter, Tyner & Parker. It is evident the sale and delivery was fully consummated at Pensacola, and the breach of the contract, if there was one, was at same place. It must have been easy to ascertain the quality of the timber at Pensacola by the examination of witnesses who handled and shipped it at that port. No notice seems to have been given to the defendant on the arrival of the timber in Liverpool of the alleged failure of his guarantee, or of the sale at a reduced price of the same, until the commencement of this action. " If the contract or the conduct of the parties fixed a place " by the market rates of which the value is to be ascer- " tained, the evidence should be confined to the market " value at that place, and not extend to the value in other " markets." Abbott's Trial Evidence, 308.

The case of Cahen vs. Platt, 69 N. Y., 348, was an action brought to recover damages for the alleged breach of a contract of purchase and sale. In the city of New York plaintiff sold to defendants certain boxes of glass, to be paid for in New York upon bills of lading, by bills of exchange on Antwerp. It was to be delivered on board of vessels at Antwerp, and to be thereafter at the risk of the defendants.

In pursuance of the contract the plaintiff delivered a portion of the glass, for which they were paid. The defendants refused to receive any more, and the action was brought to recover damages consequent on such refusal. The court in their opinion say : " The contract was made in New York, " and it was doubtless contemplated by the parties that the " glass would be carried to New York. But the plaintiff " was not bound to deliver it there. His delivery was upon " ship board at Antwerp, and after the glass was shipped " the defendants could transport it to any port of the world. " It was then at their risk, and they were liable to pay for " it, although it should be lost." " The general measure " of damage in such a case is the difference between the con- " tract price and the market price at the time and place of " delivery." Bickett vs. Colton, 41 Miss., 368 ; Boier vs. Vincent, 24 Iowa, 387 ; Sleuter vs. Wallbaum, 45 Ill., 43 ; Gregory vs. McDowell, 8 Wend., 435 ; Clark vs. Pinney, 7 Cowen, 681 ; Shaw vs. Nudd, 8 Pick., 9.

" Upon a contract to deliver goods, the general rule of " damages for non-delivery is the market value of the goods " at the time and place of the promised delivery, if no " money has yet been paid by the vendee ; but if the ven- " dee has already paid the price in advance he may recover " the highest price of such goods in the same place, at any " time between the stipulated day and the time of trial." 2 Greenleaf on Ev., 13 Ed., p. 252.

In Wait's Actions and Defences, Vol. 3, page 521, it is said : " The damages recoverable will be calculated as the " market value of the goods at the time and place when and " where they ought to have been delivered, and cites Law- rence vs. Knowles, 5 Bing., N. C., 399 ; s. c., 7 Scott, 181 ; York vs. VerPlanck, 65 Barb., 316. " And evidence of " the value of such goods in a foreign market cannot be " received upon the question of damages, unless it is averred

" in the declaration that the goods were bought for that market," and cites Cofield vs. Clark, 2 Col. T., 101.

Again, he says in Vol. 2, page 460 : " Where the vendor " incurs liability to the vendee for the defective quality of " goods sold, whether his liability arises through fraud or " a breach of contract, the measure of damages is the differ- " ence in value at the time between goods corresponding " with the representations made, and those actually deliv- " ered." Likes vs. Baer, 8 Iowa, 368.

In the case of Converse vs. Burrows, 2 Minn., 229, cited by counsel for appellants, the declaration alleged that the pork was to be furnished to the plaintiff for supplies at Fort Ridgley in the Territory of Minnesota, which plaintiff had contracted to supply, which fact was well known to the defendant. In the case under consideration, neither the con- tract nor the declaration in any way indicate the intention of plaintiffs to export the timber, or the defendant to be- come liable for a breach of the guarantee at any place ex- cept Pensacola, where the sale and delivery took place.

If the court was correct in sustaining the objection to the answer to the interrogatory addressed to Harrison, it was also right in sustaining the objection to the answer of Car- ter. The amount of allowance of £110 from the contract price in Liverpool, was in no sense evidence of the differ- ence in value of the timber as guaranteed in Pensacola, and its market value at Pensacola.

There was no error upon the part of the court and the judgment is affirmed.